5L 423
15L 350

## ALABAMA *v.* JNO. C. STANTON *et al.,*

### AND

## JAS. P. BOYCE, EX'R, *et al. v.* JNO. C. STANTON *et al.*

1. LIEN. *Vendor and vendee. Sub-purchasers.* Where a vendor has a lien upon land which has been divided into lots and sold by the vendee and the deed registered, the registration does not affect the lien of the vendor, but the whole is subject to the lien, and in making sale for its satisfaction the last lot purchased will be sold first, and so on in the inverse order until satisfaction is obtained.

2. REGISTRATION. *Recitals in deed. No notice. When.* The recitals in a registered deed that a different parcel of land had been conveyed to a different person than the vendee in the registered deed, is no notice of the fact recited and no notice of the deed referred to.

### FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

TOMLINSON FORT and J. B. HEISKELL for Boyce.

CLIFT & CLIFT for Stanton.

VANDYKE, COOKE & VANDYKE, W. S. AIKIN, RICHMOND & KEY, WHEELER & MARSHALL and J. A. CALDWELL for Creditors.

TURNEY, J., delivered the opinion of the court.

Jas. P. Boyce, executor of Ken. Boyce, on the 11th of January, 1870, sold to Jno. C. Stanton 69½ acres of land in Chattanooga at the price of $136,980. Twenty thousand were paid in cash, and the balance to be paid at 90 to 540 days.

Boyce executed bond for title. The first note was collected about the 11th of April, 1870.

The estate of James A. Whiteside and Wm. Crutchfield claimed each a one-eighth interest in the land sold by Boyce. Boyce refused to recognize these claims. They were, however, established by the chancery court.

Boyce had employed McMillan to make the sale. It was determined by this court that Boyce should pay to McMillan his commissions on the sale.

Pending the suit of *Whiteside and Crutchfield* v. *Boyce*, various creditors of Stanton filed attachment bills against him making Boyce, executor, a party.

On the 12th of May, 1873, Boyce, executor, and others, filed a bill against Staton and others to enforce the vendor's lien. On the 14th of May, 1873, a decree was rendered in favor of most of the creditors and an order for proof as to the balance. All the causes were consolidated.

A sale of the property under the decrees of the court was postponed at the instance of Stanton and others until June, 1876, when the order of sale was revived.

In September, 1876, just before the time fixed for the sale, Stanton presented a petition to the chancellor asking a postponement, for the reason that he had sold to the receiver of the Alabama and Chattanooga railroad 24 4-15 acres of the 69½ acres, including the tracks, depot, etc., at the price of $10,000 per acre, which sale had been approved by the circuit court of the United States at Mobile; that a decree of that court had been pronounced directing an inquiry into the title; that most, if not all, of his creditors had ratified the sale, upon condition that the proceeds be applied to their debts, and that it only awaited the purchase money, which was to be applied to the discharge of the debts declared liens on the lands; that the A. & C. railroad would be sold on the 4th of October ensuing, in part to raise the means to comply with the contract made by the receiver and approved by the court.

Various creditors assented to Stanton's application.

The chancellor declined to grant the application until a more definite expression could be had from attorneys and creditors.

On the 18th of September, 1876, he granted a postponement for sixty days.

Order of sale was revived October 21st, 1876, but no sale in consequence of injunction from United States court at Knoxille. Afterwards orders of sale were

revived and sale began on the 17th of September, 1877, and continued from day to day till the 21st.

On the 26th of October, being advised that $80 to $100,000 had been paid to Crutchfield, Whiteside and Boyce on vendor's liens, at the instance of creditors no further sales were made.

At October term, 1877, an order was made directing the clerk and master to report what amount of the vendor's lien, taxes and costs have been paid. The report of the clerk and master, filed November 10th, shows balance due on vendor's lien, November 12th, to be $56,260.20.

There seems to have been no action of the court upon this report.

In the years 1871–2–3 Stanton sold lots to various sub-purchasers.

On the 12th of November, 1877, Boyce filed a petition, stating that he had obtained transfers of the bids of most of the purchasers at the master's sales, and desired to raise the bids of such as had refused to transfer to him, which was granted.

Stanton had obtained transfers of bids to himself and afterwards transferred them to Boyce.

The sales to Boyce amounted to $36,517.40. The order of sale was revived as to the property remaining unsold.

On the 17th of April, 1878, a decree was entered reciting: "All parties admit that the 24 4-15 acres occupied by the A. & C. railroad had, out of the fund arising out of the sale of said 24 4-15 acres to Swann (receiver), contributed and paid its full proportion of the

liens on the 69 acres, and discharges it from further liability for the debts, except taxes, but this release is not to have any reference to the proceeds of the sale of the same, or the right of any one thereto, or liability of any one therefor.

On the 20th of April, at same term, Crutchfield and others, lien creditors, enter their protest of record and deny having given consent to decree of the 15th and 17th.

On the 29th of April, after the court had informally adjourned, but before the minutes were signed, Boyce and other complainants asked leave to enter of record that they had assented to the decree of the 17th with the understanding that all parties had agreed thereto, and asking to be allowed to withdraw their consent. The court refused to allow the entry, upon the ground that it had adjourned on the 20th and had no authority to grant the entering of the decree; that the 29th was the day assigned for reading and signing the record; but permitted Boyce and others to take a bill of exceptions, which was signed.

Upon reference ordered at October term, 1878, to ascertain how much Boyce had received on his vendor's lien, the deposition of Boyce was taken. He is asked to and does exhibit a contract between Stanton and Swann for the sale of the Alabama and Chattanooga railroad and property and appurtenances, made 31st March, 1877, and the supplemental contract between the same parties of June 19, 1877, and a further agreement between them dated Septem-

ber 21, 1877, all of which were assigned by Stanton to Boyce.

The original contract obligates Swann to pay to Stanton $250,000 in cash at different times, $430,000 in bonds of the new railroad company of $1,000 each, bearing interest, as a consideration for a title to the 24 4-15 acres and other considerations named.

The supplemental contract stipulates that Stanton shall receive $285,000 of the first mortgage bonds of the new company in satisfaction of his claims, and demands remaining unpaid, to be delivered to him when Stanton makes title to the lands in Chattanooga, etc.

The 21st of September agreement releases Swann from delivering $85,000 of bonds mentioned in contract of June, 1877, and Stanton agrees to accept $200,000 of the bonds of the company in full satisfaction for the land and all claims against the fund in suit at Mobile, and Swann agrees to loan Stanton $100,000, the $200,000 bonds to be held by him as security.

The assignment of these contracts by Stanton to Boyce on the 28th of September, 1877, recites that Stanton has sold to Boyce, etc., all the right and interest that Stanton has in and to them, for the consideration of five dollars and other valuable considerations, which, for reasons satisfactory to the parties, are not set out.

It provides to secure Boyce from liability on his bond to the clerk and master, to indemnify him against consequences of the postponement of the sale

of the 24 4-15 acres of land, to secure Boyce in the payment of two notes, one for the sum of $10,000 and the other for $1,512.57, with eight per cent. interest on both. It undertakes that Stanton shall pay to J. P. McMillan two and one-half per cent. upon the entire purchase money upon the tract of land in Chattanooga, known as Stanton's addition, and to pay to Boyce all claims, judgments, decrees, etc., of which he may be then or thereafter become the owner, assignee, or holder, or otherwise entitled to in law or equity, etc.

It also indemnifies Boyce against liability on the deed to Swann of the 24 4-15 acres; and undertakes that Stanton shall pay and satisfy any judgment or decree which may be rendered on account of the execution and delivery of said deed.

If these several covenants are kept and performed, Boyce is to pay to Stanton any surplus, or money, or property, that may remain in his hands. This assignment, evidenced by two instruments, authorizes the assignee to raise money on the usual terms, in New York or elsewhere, by sale or pledge of the bonds, etc.

Out of the bonds embraced in the assignment, Boyce claims to have paid Swann $115,000 in discharge of the $100,000 loan to Stanton; that he paid to John Swann twenty-three of the bonds in exchange for A. & C. railroad certificates; to Fred Wolfe, for liens paid and held by him, $34,000; retained in his possession, to pay taxes and liquidate liens, as per contract, $28,000.90.

It is insisted, for attachment creditors and sub-purchasers, that Boyce has, in violation of the purpose of the contract with him, speculated for his private interests in the bonds transferred to him, and must be held to account for his profits to their extent in discharge of his vendor's lien.

The $10,000 note is shown, by the deposition of Boyce, to have been given in consideration of "verbal promises, for losses, delays, expenses and damages resulting from delays in the settlement of claims against Stanton on account of purchase for the 69 acres." That the commission to McMillan is the debt of Boyce, as determined by this court, and it is insisted that the contract between Boyce and Stanton, obligating Stanton to pay it, is without consideration, and is fraudulent and void. It is also insisted the two notes are usurious. It is also argued that Boyce made large profits on the purchases of liens, taxes, etc., and will not be allowed to retain them as against the several creditors of Stanton who are parties to this suit.

On the 25th of April, 1879, various creditors filed a petition seeking to have Boyce's vendor's lien postponed until they are satisfied, and for general relief, on account of the manipulations in regard to the proceeds of the 24 1-15 acres. This petition was dismissed by the chancellor.

There is no pleading that we are able to find authorizing any action of the chancellor upon questions of usury, speculation and fraud, insisted upon by the creditors and sub-purchasers. Under proceedings insti-

tuted for the purpose, it would have been proper for the chancellor to have required Boyce to account for these things, if they are shown by proof. We are unable to say to what extent there is a consideration for the $10,000 note. The language of Boyce might, if explained, show a full consideration; it does not so indicate as it is. The eight per cent. is usurious, and, under a proceeding for that purpose, would avoid the note; still Boyce would be entitled to retain the original consideration with interest, if it be a valid one.

How far his other transactions, in the purchase of liens, taxes, etc., may be affected, we are unable to form an opinion, as the facts are not fully given. We are of opinion that, notwithstanding the indebtedness of Stanton, the existence of attachment liens, vendor's liens, etc., against him, it was legitimate for Boyce to buy the contracts of Swann, upon such terms as the parties might in good faith agree.

The chancellor decreed that all the attaching creditors of Stanton, having subordinate liens upon the land, consented to the sale, and released their liens on the 24 4-15 acres upon the faith of having, and with the right to have, the purchase money paid therefor honestly applied, first to the extinguishment of the vendor's liens, and next to the extinguishment of the other debts in their order of priority.

We are not prepared, by the facts of the record, to concur with or dissent from the chancellor. But in the uncertain condition of the consent decree, as it is called, we leave the parties to their election, either

to treat it as a consent decree, or attack it and have the matter settled under proceedings, instituted for the purpose, when the cause is remanded. This ruling, however, has no reference to the action of such persons as have, by other decrees, in their proper names or by solicitor, released their liens. It is insisted for Boyce that many of the creditors had agreed to release their liens on the 24 4-15 acres, upon the payment into the clerk's office of $40,000, and that after such agreement there had been paid to Boyce, Mrs. Gaskill, Montague and others, about the sum of $110,000; that this agreement was preceded by decree of April 15, 1877, by which a large number of parties, who had sold their claims to Montague and Wolfe, and perhaps others, for Stanton, come in and admit satisfaction of their debts or liens amounting to over $55,000, and that this is of itself more than a compliance with the undertaking. The agreement was to pay the $40,000 into the clerk's office, and it would be making a new contract for the parties to hold that a payment elsewhere was a compliance. It was intended the money should be brought under the control of the court, and disbursed by it, which was not done. While we are satisfied the decree of the chancellor is not based upon correct principles, and is not sustained by the record, yet we see enough to satisfy us the merits of the case cannot be attained upon the record as it is at present, and that further inquiry must be made, and that to such end additional pleadings and proof thereunder are necessary. There is enough in the record to indicate the probability that Boyce has

in his hands, or under his direction, funds belonging to Stanton, and for which Stanton's creditors have a right to remand of him an account.    We the more readily demand the cause for the purpose intimated, because the contracts between Stanton and Boyce, out of which the probability arises, grew out of the land sales which bring about this entire litigation, and are so intimately connected with them, as that justice cannot be done the numerous parties before the court without passing upon those contracts, and the manner in which they have been carried out.    In coming to this conclusion we have been mindful of the fact already recited, that Stanton had procured a postponement of the sales upon the ground that he had effected a sale to Swann, and that the proceeds derived from Swann were to be applied to the debts, etc. The creditors agreed to the postponement, on condition that they should be so applied.    Boyce was a party to the cause when this was done.    The order of the chancellor for the postponement was made out of term time.    The record does not show what connection, if any, Boyce had with this arrangement, and we therefore intimate no opinion as to its effect upon his rights, under the transfers from Stanton to him. The matter may, however, be inquired into under a proper procedure for that purpose in the chancery court.

As to the question of the liability of the lots of sub-purchasers from Stanton to the vendor's lien, we think it an established rule in Tennessee, that registration does not affect it, but that the whole is subject to

28—VOL. 5.

the lien, and that, in making sale for its satisfaction, the lots last purchased will be first sold, and so on, in the inverse order, till satisfaction is obtained.

The recital in a registered deed, that a different parcel of land had been conveyed to a different person than a vendee in the registered deed, is no evidence of the fact recited, and no notice of the deed referred to.

When the cause is remanded, the assignee in bankruptcy of Stanton may, if he desire, make himself a party.

The decree is reversed and the cause remanded. The costs will be divided.